Kyle E. Yaege (Bar No. 246918)
Email: Kyle@HickmanRobinsonLaw.com
HICKMAN ROBINSON YAEGE LLP
701 B St., Suite 1840
San Diego, CA 92101
Telephone: 619.819.8383
Facsimile: 619.819.6861

Elisa P. Pizzino *(Pro hac vice pending)*
Email: elisa.pizzino@gmail.com
LAW OFFICE OF ELISA P. PIZZINO
697 W. Market St., Ste. 102
Akron, OH 44303
Telephone: 330.603.1913
Ohio Bar No. 0043723 – NY Bar No. 00185515

Attorneys for Plaintiffs
ROBERT MACOM and ANTHONY EMBERGER

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROBERT MACOM and ANTHONY EMBERGER,

Plaintiffs,

v.

SERVICE FINANCE COMPANY, LLC, and JOHN DOES 1-10 inclusive,

Defendants.

Case No.: [Case No.]

**COMPLAINT FOR:**

**I. Breach of Contract**
**II. Fraud and Fraudulent Misrepresentation**
**III. Negligence**
**IV. Fraud in the Inducement**
**V. Conversion**
**VI. Civil Conspiracy and Fraud**
**VII. Violation of the Truth In Lending Act, Military Lending Act, and California Financing Law**
**VIII. Violation of CA Bus. & Prof. Code § 7160**
**IX. Unfair Business Practices Cal Bus. & Prof. Code § 17200**

**JURY TRIAL DEMANDED**

Now come the Plaintiffs, Anthony Emberger ("Emberger") and Robert Macom ("Macom"), by and through undersigned Counsel, and for their Complaint state as follows:

## JURISDICTION AND VENUE

1. The court has jurisdiction under 28 USC § 1332 based on diversity because the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

2. The court has jurisdiction over Plaintiffs' claims that are based on violations of the Truth-in-Lending Act 15 U.S.C. § 1601 *et seq.*, the Military Lending Act. 10 U.S.C. § 987.

3. Venue is proper because Service Finance Company, LLC ("Service Finance") conducts substantial, continuous, and systematic business within the Central District of California through contractors doing business in this District, including Multitaskr Construction, Inc. a now defunct company that is central to several of the causes of action in this Complaint. 28 U.S.C. § 1391(b)(3).

4. Service Finance has purposefully availed itself of the privilege of conducting business in this District, has sued contractors like Multitaskr in this District, and is therefore subject to personal jurisdiction here.

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

6. At all relevant times to this lawsuit, Plaintiffs Emberger and Macom (collectively "Plaintiffs") are active-duty military and are covered borrowers as set forth in the Military Lending Act, 32 CFR § 232.3(g)(2)(i), and therefore are not subject to the arbitration provisions set forth in the attached loan documents. 10 U.S.C. § 987 (e)(3).

## PARTIES

7. Plaintiff Emberger is currently residing in Stafford, Virginia.

8. Plaintiff Macom is currently a resident of Wilmington, North Carolina, and a citizen of the state of Texas.

9. Service Finance Company, LLC ("Service Finance" or "Defendant") is a Florida limited liability company, with its principal place of business at 555 S. Federal Hwy. Suite 200, Boca Raton, FL 33432.

10. Plaintiffs do not know the true names and capacities, whether corporate, partnership, individual, or otherwise, of Defendant and therefore are sued in this case as DOES 1-20, inclusive, pursuant to CA Civ Pro Code § 474. Plaintiffs therefore allege that each of the fictitiously named defendants are in some manner responsible for the acts or omissions alleged herein, and are liable to Plaintiffs for such acts or omissions. Plaintiffs will seek to amend this complaint with the true names of the DOE Defendants as their names and facts relative to each such DOE Defendant are discovered.

## INTRODUCTION AND BACKGROUND

11. This case arises from Service Finance loans that were imposed upon Plaintiffs as a result of the unlawful lending practices of Service Finance, as well as its business relationship with Multitaskr—a dba used by several entities, including Multitaskr Construction, Inc.

12. Multitaskr was one of Service Finance's residential construction/home improvement contractors, commonly referred to as a "Dealer."

13. Multitaskr closed its doors and ceased doing business in and around September 2024, and prior to that marketed and sold residential home construction and solar projects in this District.

14. Multitaskr marketed and sold construction services to Plaintiffs.

15. As part of the process, Multitaskr also marketed Service Finance's loan program in order to line up financing for the construction services to be provided.

16. Thereafter, Plaintiffs signed onto two Service Finance Loans attached hereto as EXHIBITS A and B ("Loans").

17. Ultimately, and without the consent of Plaintiffs, Service Finance disbursed funds directly to Multitaskr, and Service Finance is now attempting to hold Plaintiffs accountable for those funds under the auspices of the Loans.

18. The loan documents did not authorize monies to be disbursed directly to Multitaskr.

19. The Loans attached hereto as EXHIBITS A and B, did not disclose the Dealer Fees that were charged against these loans.

20. Unbeknownst to Plaintiffs, and upon information and belief, Multitaskr entered into a dealer or program agreement with Service Finance ("Dealer Agreement").

21. Based on information and belief, the Dealer Agreement between Service Finance and Multitaskr is similar, if not the same, as the "Standard Master Dealer Agreement" ("SFC Dealer Agreement") attached hereto as EXHIBIT C.

22. Plaintiffs have requested but were not given a copy of the Dealer Agreement between Service Finance and Multitaskr ("Dealer Agreement"), and to this date have not received a copy of the Dealer Agreement, despite requests for a copy from Service Finance.

23. The SFC Dealer Agreement with another contractor like Multitaskr discusses the Dealer Fees:

> **Purchase Price; Dealer Fees.** The purchase price to be paid by SFC with respect to the purchase of an Instrument from Dealer shall be equal to the sum of the original face amount of the Instrument less the applicable "Dealer Fee" (defined below) set forth on Exhibit A annexed hereto as modified pursuant to this Section 3 (the "Purchase Price"). The Initial Dealer Fees related to the financing products offered by SFC are set forth on Exhibit A annexed hereto and made a part hereof expressed as a percentage of the amount equal to: (i) the original face amount of the Instrument minus (ii) all fees set forth in the Instrument (the "Dealer Fee"). EXHIBIT C, p. 5

24. It was upon learning of this SFC Dealer Agreement in September 2024, that Plaintiffs learned that Dealer Fees were likely a charge against their Loans.

25. Accordingly, and upon information and belief, Dealer Fees were charged by Service Finance against Plaintiffs' loans.

26. These Dealer Fee charges against Plaintiffs' loans were not included in the required loan disclosures as shown in EXHIBITS A and B.

27. In failing to include "Dealer Fees" in its loan disclosures, Service Finance violated Truth in Lending laws, the Military Lending Act as well as California Consumer Finance Law.

28. The Service Finance Dealer Agreements allows contractors like Multitaskr to partner with it as its "Dealer" which then allowed Multitaskr to easily secure funding for customer's projects by using an established software platform, forms, structure, and rules established by Service Finance.

29. Approval of a contractor as a "Dealer" gives credibility to the contractor in the eyes of consumers in that the Dealer has the ability to offer financing of a national lender, and offers services to assist them with loan applications and loan documentation.

30. Fintech lenders like Service Finance are incentivized to engage in these partnerships or joint ventures with Dealers because of the Dealer Fee the lender receives for each loan the Dealer gets a customer to sign, together with interest on loan payments from borrowers on the same money the lender retains.

31. As part of the Dealer Agreement, Service Finance controlled the conduct of Multitaskr employees or representatives including (1) requiring Multitaskr employees to use specific software and technology in entering transactions with customers, (2) controlling what loan products of Service Finance that Multitaskr could offer, (3) controlling the marketing of its loans, (4) retaining the right to discipline Multitaskr for violations of the Dealer Agreement, and (5) set the guidelines for Dealer Fees that would be charged against the loans that were secured through Service Finance's lending program.

32. The Service Finance loans are only offered through contractors like Multitaskr, and not direct to consumers.

33. Service Finance's lending program enabled and incentivized dealers such as Multitaskr to engage in deceptive and fraudulent practices such as misrepresenting project completion to Service Finance.

34. One of the tools Multitaskr used to incentivize borrowers was Service Finance's pay later program whereby payments on loans were deferred for a period of 12 months.

Multitaskr represented to Plaintiffs that during this grace period, construction would be completed, thus making the build now, pay later plan attractive to borrowers.

35. This enabled, incentivized and provided the opportunity Dealers like Multitaskr to engage in fraudulent business practices such as lying to customers regarding project financing, using high pressure tactics to manipulate its customers, including Plaintiffs, represent to fintech lenders like Defendant that work was completed when it was not, and to take other deceptive actions that unlawfully imposed significant loan obligations upon them.

36. Upon information and belief, rather than implement reliable and competent measures to verify work completion, Service Finance maintained its historic practice of prefunding home improvement projects in order to keep the program attractive to contractors like Multitaskr, albeit under the pretext of requiring work completion certifications from Dealers.

37. Service Finance's actions, or inactions as the case may be, constitute the type of activity that both federal and state consumer protection laws were intended to prohibit.

38. As a result of the lending abuses by both Service Finance and Multitaskr, the consumer market was flooded with bad loans.

39. Part of the lending scheme was the intentional disregard by Service Finance to employ a competent and reliable system to verify work completion before disbursing loan funds to Multitaskr.

40. And based on information and belief, Service Finance knew, should have known, or turned a blind eye to the fact that contractors like Multitaskr, were not only lying to its customers about work completion, but were falsely communicating work completion status to Service Finance.

41. Once Service Finance received certification from Multitaskr that work was completed on any given construction project, Service Finance began the process of disbursing funds to Multitaskr. This is what occurred with the Loan Monies at issue in this case, and without authorization of Plaintiffs.

42. Service Finance was and is incentivized to engage in these partnerships or joint ventures with Dealers because it presumably receives Dealer Fees for each loan the Dealer gets a customer to sign, together with interest on loan payments from borrowers on the same money the lender retains or is paid as a result of each funded loan.

43. Service Finance also benefits from its ability to then sell the loans downstream, thus further profiting from the bad loans.

44. In the absence of proper oversight and controls by Service Finance, the 12-month deferment period, the work completion façade that allowed contractors to continue the "prepayment abuses" that has plagued the fintech industry for years, irresponsible, negligent, and intentional partnering with dubious contractors all contributed to abusing well-intentioned borrowers like Plaintiffs.

45. Under this scheme, borrowers are unable to detect or recognize the deceptive lending practices until much later.

46. Borrowers like Plaintiffs experienced the full financial impact when the one-year loan deferment period ended and the monthly payments began, and no construction project existed to show for it.

47. Both Plaintiff Emberger and Plaintiff Macom became victims of both Multitaskr and Service Finance's negligent, unlawful, and fraudulent practices causing two Service Finance loans to be imposed upon Plaintiffs totaling $200,000.00 for which they received no benefit.

**<u>The Home Improvement Scheme</u>**

48. Beginning in n 2022, Emberger sought to improve his home at 5930 Lauder St., San Diego, California. ("Property).

49. In order to achieve the improvements which included planning and construction services (collectively "Project" or "Projects"), Multitaskr provided loan applications and lending instruments to Plaintiffs via Service Finance's web-based software platform. This software platform utilized loan document forms designed and published by Service

Finance with blanks that the Multitaskr, as Dealer for Service Finance, filled in ("Loan Documents").

50. Loan Documents of Service Finance were sent to Plaintiffs to electronically sign via DocuSign or similar electronic signature application.

51. The Loan Documents did not disclose the Dealer Fees.

52. Multitaskr told Plaintiffs that loan applications had to be put in place in order to allow Multitaskr to move forward with the projects, to get permits in place, to order project materials, and ensure that the project could proceed and that costs would not increase.

53. Plaintiffs were never told that Loan Monies would be paid to Multitaskr prior to project completion, nor did Plaintiffs authorize Service Finance to pay monies directly to Multitaskr.

54. Multitaskr told Plaintiffs that any funds that they applied for would be held in escrow and would not be released until certain project phases were completed – e.g. planning, drawings, permitting, materials, labor, construction, etc.

55. Along with the trust Plaintiffs placed in Multitaskr, and relying on Multitaskr's expertise and ability, Plaintiffs reasonably relied on Multitaskr's representations about project progress.

56. Neither Plaintiffs knew or were told that monies from Service Finance would be disbursed into an unregulated and unsupervised bank account of Multitaskr prior to project completion.

57. Upon information and belief, Service Finance disbursed Loan Monies to Multitaskr pursuant to Plaintiffs' Loans.

58. Plaintiffs did not authorize Service Finance to disburse the Loan Monies to Multitaskr.

59. Multitaskr did not use the Loan Monies to pay for Plaintiffs' Project, and were used unlawfully for other purposes.

60. During the time that Multitaskr was representing to Plaintiffs that drawings and building permitting was completed and that project materials were purchased, none of which turned out to be true, Multitaskr submitted project completion certifications to Service Finance, misrepresenting that Plaintiffs' projects were completed.

61. Service Finance did not independently verify that Plaintiffs' Project was completed.

62. Instead Service Finance relied on the representations of Multitaskr that work was completed, thereby triggering Service Finance's obligations under the Dealer Agreement to send funds to Multitaskr.

63. None of the Loan Monies were paid to Plaintiffs.

64. Multitaskr's false and deceptive representations, enabled by Service Finance, ensured that neither Plaintiffs were aware that Multitaskr was working a scheme to receive full payment from the lenders, place the funds into its own operating account, and then use those funds unlawfully and to the detriment of Plaintiffs.

65. As a result of the deceptive and unconscionable practices of Multitaskr acting in coordination and in line with the practices and procedures of Service Finance and its lending platform, Multitaskr wrongfully received Loan Monies from Service Finance, imposed the payback obligation on Plaintiffs, then misused these funds.

66. It is unknown whether Multitaskr returned any of the Loan Monies to Service Finance.

67. The deceptive and fraudulent actions Multitaskr are acts sufficient to deem Plaintiffs' 2 loan agreements with Service Finance void *ab initio*.

68. Failure of Multitaskr and Service Finance to disclose that Service Finance was receiving "kickbacks" from the loans under the auspices of Dealer Agreements Service Finance had with Multitaskr, also makes the agreements void *ab initio*, which is a primary reason that one of the remedies for violations of Truth in Lending Act includes the ability of the courts to render such agreements void.

69. Moreover, Service Finance is liable to Plaintiffs for the actions of Multitaskr under the Holder Rule as explained more fully below.

70. Service Finance acted in concert and in conjunction with Multitaskr, and therefore are liable to Plaintiffs under agency law as explained more fully below.

71. Service Finance are also liable to Plaintiffs, whether negligently or intentionally, for failing to properly and adequately and competently scrutinize Multitaskr's business operations, conduct proper due diligence of Multitask, and having learned of inconsistencies in Multitaskr's business and financial operations, partnered and continued to partner with Multitaskr as a Dealer, and turned a blind-eye to Multitaskr's deceptive and fraudulent activities.

**Deceptive Lending Scheme Uncovered**

72. Plaintiff Macom returned to San Diego from his overseas deployment in April 2024, and due to ongoing concerns over the lack of transparency and inability to communicate with Multitaskr by phone or email, began looking more closely into the situation with Multitaskr.

73. After learning that Multitaskr did none of the promised work, Macom spoke with Multitaskr to express the loss of trust in Multitaskr's ability to provide the agreed upon construction projects.

74. At some point Macom was told that the problem had been escalated.

75. Multitaskr acknowledged that there were problems within the company, that the Project did not move forward as expected, and insisted on assigning another "team" to the Project.

76. For months, Plaintiffs were given several explanations as to why things were delayed, and were told that permitting and architectural plans had been done.

77. Plaintiffs requested to see the plans and permitting that were allegedly completed, but were given nothing.

78. Upon information and belief, no building permits were issued, revealing that Multitaskr was continuing to deceive Plaintiffs.

79. As Plaintiffs became increasingly suspicious of Multitaskr, Macom called one of the lenders and found out that the Loan Monies had been fully disbursed to Multitaskr, and

were not held in escrow with Service Finance. This came as a shock to Plaintiffs since prior to this, Multitaskr on multiple occasions represented that the Loan Monies were not disbursed to them, but rather were being held in "escrow" with the lender.

80. Plaintiffs scheduled a meeting with Multitaskr to press for answers as to where the Loan Monies were, and were now fearful and stressed about what happened to the Loan Monies given that no work had been done on the Project. Multitaskr admitted that the Loan Monies were placed into a Multitaskr operating account, and were not readily available due to the company being "audited."

81. Plaintiffs demanded that the Loan Monies either be immediately transferred to them so that they can repay the lender, or return the Loan Monies directly to the lender.

82. Plaintiffs then informed Service Finance that work was not completed , but Service Finance refused and continues to refuse to cancel the loans.

83. Plaintiffs continued attempts to obtain the Loan Monies from Multitaskr without success.

84. For several weeks Multitaskr continued to offer varying explanations to Plaintiffs regarding the loan monies, "clawbacks," and other contracts in the "pipeline."

85. Plaintiffs were told that Multitaskr was working with various "teams" and finance people to arrive at a workable solution.

86. After all these communications, and months of demands by Plaintiffs for the Loan Monies, Multitaskr failed turned over the Loan Monies to Plaintiffs.

87. The actions of Multitaskr in appearing to salvage its relationship with Plaintiffs was merely smoke and mirrors, a façade to avoid the discovery of the fraud, and it was merely buying time to figure a way out of the deceptive scheme.

88. Likewise, Plaintiffs made multiple requests to Service Finance for Loan Documents as well as any work completion certifications it received from Multitaskr, and received only partial information many months later.

89. In early 2025, Service Finance was asked to provide a copy of the Dealer Agreement it had with Multitaskr, but as of this drafting of this Complaint, it has refused to do so.

**THE FINANCING SCHEME – Part One**

**Lending Actions of Multitaskr ("aka dealer")**

90. Plaintiffs were told that in order to secure the pricing quoted for the home improvement project, lending institutions had to be lined up.

91. Multitaskr led Plaintiffs to believe that in order to fund any given Project, loans offered via Multitaskr would have to be utilized for the best chance of success of the Project.

92. Had Plaintiffs known that Dealer Fees were charged against their loans and taken off the top of the loaned amount, Plaintiffs would have sought financing elsewhere and with other lenders that did not charge such fees.

93. The Service Finance loans could only be accessed through its Dealers. Therefore, Plaintiffs' loan applications and documents were fed to Service Finance via Multitaskr's use of Service Finance's technology lending platform.

94. The loans monies disbursed to Multitaskr from Service Finance under this fraudulent scheme were generated from 2 loans:

Service Finance Company, LLC - Loan No. 4427888 for $100,000 dated 11/21/2023
Service Finance Company, LLC - Loan No. 4450131 for $100,000 dated 12/03/2023

These loan documents are attached hereto as EXHIBITS A and B respectively.

95. These Loans wrongfully imposed loan obligations upon Plaintiffs and were promoted and facilitated by Multitaskr on behalf of Service Finance.

96. Multitaskr, together with Service Finance directed every aspect of Plaintiffs' Loan Documents, applications, and loan disbursements.

97. Multitaskr entered Plaintiffs' personal information into loan applications, completed various sections of the loan documents including what was to be constructed, and checked various boxes on the lending instruments.

98. Although the lending documents were read by Plaintiffs, the entirety of the loan documents were reviewable by Plaintiffs on an electronic device, and were summarized by Multitaskr just prior to either Plaintiff signing.

99. As explained in more detail in several places in this Complaint, Multitaskr intentionally misled the Plaintiffs with regard to the loan agreements and the practices and procedures of the loan and home construction program.

100. Multitaskr directed Plaintiffs to initial and sign the documents, having given them misleading statements about the loan documents.

101. Because Plaintiffs were absent from the area during what was supposed to be construction activity, Plaintiffs trusteed and relied solely on representations made by Multitaskr as to project progress.

102. Although Multitaskr sent work completion certification to Service Finance , Plaintiffs never authorized the release of funds to Multitaskr.

103. Evidence of this fraudulent lending scheme was Multitaskr's vague instruction to Plaintiff to make a "completion call" to Service Finance.

104. Plaintiff Emberger was told this and believed that the completion call was to verify that loan documents were completed, and to verify that some work had been completed – not that the full construction project was done.

105. In his "completion call" to Service Finance, Plaintiff Emberger did not authorize funds to be released to Multitaskr.

106. In Emberger's "completion call" the Service Finance representative did not make it clear to Mr. Emberger to what work the representative was referring. Therefore, Mr. Emberger simply stated what was told to him by Multitaskr that project timelines and project plan milestones were being met and completed.

107. Emberger was told that the "completion call" was necessary to keep the construction and financing process moving forward.

108. Plaintiff Emberger did not direct Service Finance to disburse funds to Multitaskr.

109. Likewise, Plaintiff Macom did not direct Service Finance to disburse the Loan Monies to Multitaskr, nor did he represent that the Project was completed.

110. Unlike Plaintiffs, and based on information and belief, Multitaskr was obligated under its written agreement with Service Finance, to verify work completion and customer satisfaction prior to receiving funds from it.

111. There was no requirement in any of the documents or agreements related to Plaintiffs' Loans that customers of Multitaskr were required to do so.

112. Service Finance did not do any independent verification of the representations made by Multitaskr with respect to projects having been fully constructed or completed.

113. Based on information and belief, Service Finance knew or had reason to know, that Multitaskr was likely and in fact did, misrepresent project completion status to Service Finance.

**THE FINANCING SCHEME – Part Two**

**Service Finance's Contribution: Dealer Contracts/Partnerships/Agency**

114. Service Finance partnered with Multitaskr for the sale of home improvement work via Dealer Agreements.

115. Service Finance's has a history of partnering with contractors such as Multitaskr who hold themselves out as providing "financing" to its customers. These joint ventures, partnerships, or principal-agent relationships are memorialized in the agreements in place between Service Finance's and its Dealers, which includes the Dealer Agreements.

116. This relationship between Multitaskr and Service Finance created an agency type relationship.

117. Within the business relationship between Service Finance and Multitaskr, the Dealer Agreements dictated that certain fees in loan documents provided by Service Finance and Multitaskr to customers were not to be disclosed to customers, and thereby Plaintiffs.

118. Accordingly, at all relevant times, Service Finance acted through its Dealers including Multitaskr.

119. All loan documents, applications and lending instruments were provided by Service Finance.

120. Under the pre-arranged, non-disclosed agreement with Multitaskr, Multitaskr assigned the home installment contracts and lending documents to Service Finance

121. As part of the Dealer Agreement, Multitaskr was obligated to repay the funds entrusted to it from Service Finance in the event Multitaskr breached any of the terms of the Dealer Agreement or the home installment contract.

122. Multitaskr breached its agreement with Service Finance on multiple occasions, including with respect to its failure to complete the home improvement project of Plaintiffs.

123. Service Finance's ability to control Multitaskr's conduct was dictated by the rights and obligations specified in the Dealer Agreements which included, in part, the right to audit Multitaskr, the right to terminate the relationship if Multitaskr did not comply with the strict requirements in the Dealer Agreement, requiring Multitaskr to use its specific lending documents and contracts, and requiring Multitaskr to not disclose the Dealer Fees to its customers.

124. Upon information and belief, during 2022 and 2023, and continuing until Multitaskr ceased operations in 2024, Multitaskr falsely represented to lenders that approximately 100 construction projects, some of which were funded by Service Finance, were completed, when in fact none were.

125. These misrepresentations were made in connection with loan disbursements, inducing lenders, including Service Finance, to release funds based on materially false information.

126. The consequence of the nondisclosed Dealer Agreement Multitaskr had with Service Finance was that Service Finance was not only retaining a portion of the monies financed, but the borrower was to pay back the full amount of the loan, which included the "kickback" amount, *plus interest on those retained funds*, in addition to the monies that were to be used for home improvement.

127. The lending scheme allowed Service Finance to increase their companies' earnings by taking undisclosed "kickbacks" on Plaintiffs' loans and likely on every loan they funded through Multitaskr and other such dealers.

128. Lenders like Service Finance would then sell these loans, thus obtaining additional financial gain at the expense of innocent borrowers.

129. Service Finance failed to exercise oversight over Multitaskr, rubber-stamping the loan applications and ratifying the deceptively procured loan agreements.

130. At all relevant times, Service Finance was acting by and through its agents or employees, in concert with a dual agency type relationship with Multitaskr by providing financing to the Plaintiffs for their Project, and further, ratified the conduct of Multitaskr.

131. The actions of Multitaskr and Service Finance were intentional and reckless and thus constitute violations of several federal and state consumer laws that were designed to protect against the actions complained of herein.

## SYSTEMIC AND HISTORIC LENDING ABUSES INVOLVING THIRD-PARTY CONTRACTORS AND LITIGATION INVOLVING FINTECH LENDERS LIKE SERVICE FINANCE

132. Based on information and belief, beginning in or around 2022, customers of Service Finance began filing complaints with various administrative agencies including the California State Licensing Board, and the California Department of Financial Protection and Innovation regarding the fraudulent conduct of Dealers like Multitaskr.

133. Litigation in several states involving fintech lenders like Service Finance, and the abuses occurring with their third-party merchants like Multitaskr were filed, along with regulatory actions, shareholder and investor lawsuits.

134. Based on information and belief, beginning as early as 2022, and continuing in 2023 and 2024, customers of Multitaskr complained to lenders and filed lawsuits in California complaining of the same or similar events as alleged herein.

135. Multitaskr's contractor's license has been suspended by the Contractors State License Board and several claims have been filed against Multitaskr's license.

136. Because the bond amount is only $25,000, and there are many claimants, including Defendant Service Finance, jilted borrowers will never or be minimally compensated.

137. Based on information and belief, Multitaskr closed its business operations and stopped answering its phone on or about September 30, 2024.

138. Based on information and belief and beginning in or about 2022, Multitaskr became aware that they faced significant claims as a result of its fraudulent business practices, that did and were likely to render Multitaskr insolvent.

139. Service Finance knew or should have known of the poor financial and business operations of Multitaskr as early as 2022.

140. Prior to 2022, proper due diligence of this start-up company by Service Finance would have prevented Plaintiffs and many borrowers from becoming victims of bad loans.

141. Service Finance intentionally or negligently disregarded any known or perceived risks when entering and continuing the business relationship with Multitaskr.

142. Due to the negligent or intentional oversight of Multitaskr, Service Finance was complicit in the continued fraud and fraudulent lending practices of Multitaskr.

143. As a result of the unlawful use of Loan Monies funded by the loans imposed upon Plaintiffs, the unlawful lending practices of Multitaskr and Service Finance, the concealing of Dealer Fees and failure to disclose those fees in the lending instruments, Plaintiffs have been harmed, suffering, *inter alia,* concrete financial loss.

## THE HOLDER RULE

144. Under a federal administrative law promulgated by the FTC called the "Holder in Due Course" or "Holder" Rule, Plaintiffs as consumers can assert defenses to repayment on their loans or assert a claim for past payments to a creditor, where that lender has a qualifying relationship to the seller that made the misrepresentation or failed performance.

145. Service Finance had such a relationship with Multitaskr, and was required to insert "Holder Rule" language in its loan documents. *See* 16 C.F.R. Part 433.

146. The Loan Agreements did in fact contain a "Holder Rule" Notice subjecting Service Finance, as the loan holder, to "all claims and defenses which debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof," a contract provision which subjects Service Finance to any liability that may arise based on the misconduct of Multitaskr.

**AGENCY**

147. Based on information and belief, Plaintiffs allege that at all times relevant to these proceedings, Multitaskr was the agent (actual or ostensible) or employee of Service Finance. In acting within the course and scope of such employment or agency, Service Finance took part in the acts and omissions set forth herein, by reason of which each Service Finance is liable to Plaintiffs for the relief prayed for.

148. Plaintiffs allege that at all times relevant to these proceedings, Multitaskr acted as agent and at the direction of Service Finance.

149. Service Finance retained the right to control the conduct of Multitaskr requiring, *inter alia*, (1) Multitaskr use specific software, applications, and technology when engaging in transactions with Plaintiffs on Service Finance' behalf; (2) controlling the lending products that Multitaskr could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) Entrusting Multitaskr with its funds and to utilize those funds lawfully and in accordance with the Dealer Agreement, (4) requiring on demand auditing of Multitaskr, and (5) retaining the right to discipline Service Finance's agents and contractors for violation of policies and procedures set by Service Finance.

150. At all times relevant to this lawsuit, Service Finance ratified the conduct of Multitaskr as a Service Finance agent.

**COUNT I - BREACH OF CONTRACT**

151. Plaintiffs restate and incorporate the preceding paragraphs as if fully rewritten herein.

152. Pursuant to the terms of the Home Installment Contract signed and by Multitaskr and simultaneously assigned to Service Finance, Multitaskr agreed and promised to provide design and construction services to Plaintiffs.

153. Multitaskr failed to perform as agreed.

154. Multitaskr breached the terms of the Home Installment Contracts by failing to deliver the goods and services promised.

155. Due to non-performance by Multitaskr, Plaintiffs demanded that Multitaskr return the Loan Monies to Service Finance or to them so that they can return the Loan Monies to Service Finance.

156. Multitaskr, and therefore Service Finance, further breached the terms of the Home Installment Loan by taking and using Plaintiffs' Loan Monies for unlawful purposes.

157. Multitaskr had no right to possession of the Loan Monies, and wrongfully received and used the Loan Monies.

158. Service Finance was complicit with Multitaskr and is jointly and severally liable for the breach of the contract.

159. As a direct and proximate result of Multitaskr's breach of contract, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the use of their monies, financial and mental distress, actual and consequential damages.

160. Multitaskr's breach of contract and wrongful receipt and use of the Loan Monies also forms the basis for liability of Service Finance under the Holder Rule.

161. Service Finance are also liable for Multitaskr's breach of contract under law of Agency.

162. Plaintiffs ask for an order of rescission of the Home Installment Contracts between Plaintiffs and Defendant Service Finance Company.

163. As a result of Defendant's actions Service Finance has caused Plaintiffs to incur significant financial loss, legal fees and costs, which are continuing in nature, and are in excess of $200,000.00.

## COUNT II – FRAUD AND FRAUDULENT MISREPRESENTATION

164. Plaintiffs restate and incorporate the preceding paragraphs as if fully rewritten herein.

165. Multitaskr intentionally misled Plaintiffs regarding its ability to perform the labor and services needed for Plaintiffs' home construction project.

166. Multitaskr owed a duty to Plaintiffs to disclose truthful information about their ability to perform as agreed.

167. Multitaskr intentionally and fraudulently induced Plaintiffs to enter into agreements for the home improvement Project under the intentional and false representations that the project would be pursued diligently and completed in a timely manner within the 12-month loan grace period.

168. Multitaskr intentionally made false representations regarding facts material to their ability to implement and complete the Project.

169. Multitaskr possessed actual or constructive knowledge of the falsity of their representations regarding their ability to design and deliver the home improvements promised to Plaintiffs.

170. Multitaskr made the fraudulent and false misrepresentations to matters of material fact as fully described herein, with the intent to mislead Plaintiffs into relying on such fraudulent and false misrepresentations.

171. Plaintiffs reasonably relied on Multitaskr's promises as to when the construction would be completed.

172. Plaintiffs justifiably relied on Multitaskr's fraudulent and false misrepresentations to their detriment.

173. The home improvement lending documents were further fraught in the execution by, *inter alia*, employees or agents of Multitaskr making loan applications in Plaintiffs' names, and Multitaskr and Service Finance prefilling out loan documents, failing to provide Plaintiffs with proper disclosures, using time pressure and sales techniques, such

as falsely claiming that the Project would fail or not move forward if they did not e-sign any particular lending document.

174. Plaintiffs were in vulnerable and untenable situations when presented with the home improvement documents.

175. At all times in the execution of the Loan Documents, Multitaskr knew that they were not going to honor the terms of the agreements and were not going to either timely perform, or not perform at all.

176. In doing the acts complained of, Multitaskr acted maliciously and with conscious disregard of Plaintiffs' rights, and with the express intent to defraud Plaintiffs.

177. Upon information and belief, Service Finance knew, had reason to know, or willfully turned a blind eye to Multitaskr's wrongful and deceptive practices.

178. Service Finance knew, or with reckless disregard for the truth, of complaints from Multitaskr customers, of lawsuits from various individuals employed by Multitaskr, of lawsuits and regulatory actions within the fintech industry noting the risks and exposure that lenders were experiencing with contractors like Multitaskr.

179. Service Finance knew of the risks and problems related to contractors like Multitaskr as evidenced by other lawsuits it brought against Dealers like Multitaskr.

180. Despite having this knowledge, or with reckless disregard thereof, Service Finance continued its business relationship with Multitaskr wherein it purposely enabled Multitaskr to take advantage of Plaintiffs.

181. Service Finance knew that partnering with Multitaskr would allow it to disburse funds to Multitaskr regardless of whether Multitaskr met its obligations to Plaintiffs, thereby fraudulently imposing loan obligations on Plaintiffs.

182. Service Finance wanted only to get their loans to market by using Multitaskr as a willing participant knowing that the only ones benefitting from the bad loans were both Multitaskr and Service Finance.

183. Service Finance's use of "completion calls" to fund loans and then place the burden of repayment of those funds on Plaintiffs was an act of fraud.

184. In sending funds to Multitaskr, then placing the burden of payment of those funds upon Plaintiffs when Plaintiffs did not authorize release of funds to Multitaskr, was an act of fraud.

185. Service Finance committed these acts in order to financially benefit off the backs of innocent borrowers.

186. At all times, Service Finance acted through its agent, Multitaskr.

187. As a direct and proximate result of Multitaskr and Service Finance's unlawful and fraudulent lending practices, misrepresentations, and fraudulent acts, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies and credit, financial and emotional distress, and other substantial, actual, and are also entitled to exemplary and punitive damages.

## COUNT III – NEGLIGENCE

188. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein.

189. Pursuant to Multitaskr's representations Multitaskr owed a duty to Plaintiffs to disclose truthful information about their ability to perform as agreed.

190. Multitaskr made false representations regarding facts material to their ability to implement the Project.

191. Multitaskr knew or should have known of their inability to provide the home improvements promised to Plaintiffs.

192. Plaintiffs justifiably relied on Multitaskr's representations about its ability to provide the promised services.

193. As a direct and proximate result of the Multitaskr's negligence, Plaintiffs received no benefit from Multitaskr, have incurred consequential damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, and other substantial, actual, and consequential damages.

194. Service Finance, acting in a dual agency relationship with Multitaskr was complicit with Multitaskr's negligent actions, and is therefore liable to the extent Multitaskr is liable to the Plaintiffs as being complicit with Multitaskr's negligence, as well as being liable under both Agency law and the Holder Rule.

## COUNT IV – FRAUD IN THE INDUCEMENT

195. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein.

196. Service Finance acted by and through their agent, Multitaskr.

197. Upon information and belief Service Finance maintained control of the day-to-day activities of Multitaskr's home improvement/construction business, including developing the sales strategy and financing of the home improvement projects with Service Finance loans used by Multitaskr to secure customers.

198. At the time Multitaskr induced Plaintiffs to enter into the home improvement project, Multitaskr knew that it had no intention or even the ability to timely complete the work promised, yet promised to do so anyway in order to induce Plaintiffs to make applications and sign loan documents with Service Finance.

199. At the time of the making of the agreements, Plaintiffs held Multitaskr in a position of trust and confidence, and relied upon Multitaskr's representations in choosing to enter into the loan agreements.

200. At the time Multitaskr induced Plaintiffs to enter into the agreements, Plaintiffs were not knowledgeable regarding general contractors or construction, and were totally dependent upon Multitaskr's honesty, integrity, experience, judgment and advice in choosing to have Multitaskr do the project.

201. As a direct and proximate result of Multitaskr's actions and misrepresentations about the Project and loan documents, Plaintiffs executed the loan agreements with Service Finance.

202. Multitaskr's actions for which Service Finance is liable under the Holder Rule, constitute unlawful, deceptive, and intentional acts and therefore in violation of Cal. Bus. & Prof. Code § 7160 *et seq*. and provides for an award of reasonable attorney fees, statutory and exemplary damages to "Any person who is induced to contract for a work of improvement, including but not limited to a home improvement, in reliance on false or fraudulent representations or false statements knowingly made…."

203. Multitaskr's actions for which Service Finance is liable under the Holder Rule, also constitute "malice," "oppression," and "fraud" as those terms are used in Cal. Civ. Code § 3294. Under this provision, Plaintiffs are entitled to an award of exemplary damages in an amount sufficient to deter Defendant from engaging in similar conduct in the future.

**COUNT V– CONVERSION**

204. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein.

205. Multitaskr received money from Service Finance, but did not perform construction services as promised to the Plaintiffs.

206. Plaintiff, not Multitaskr, had the right to the possession of the proceeds of all funds flowing from the Service Finance loans that were made on Plaintiffs' credit applications.

207. Multitaskr took possession of the Loan Monies preventing Plaintiffs from accessing those monies.

208. Plaintiffs demanded that Multitaskr turn the Loan Monies over to Plaintiffs, but Multitaskr refused to do so.

209. To date, none of the Loan Monies were released or paid to either Plaintiffs.

210. It is not known whether any of Plaintiffs' Loan Monies were returned to Service Finance.

211. Multitaskr's actions constitute conversion, are imputed to Service Finance under the Holder Rule and Agency laws, and have caused financial and consequential damages to Plaintiffs in at least the amount of $200,000.00.

212. These actions of Multitaskr, and therefore Service Finance, constitute actions that violate Cal. Civ. Code § 3294 which entitles Plaintiffs to exemplary damages in addition to their actual and compensatory damages.

**COUNT VI – CIVIL CONSPIRACY**

213. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein.

214. Upon information and belief, Multitaskr defrauded many consumers by, *inter alia,* falsely promising to design, permit and construct Accessory Dwelling Units (ADUs) on any given consumer's property in order to cause homeowners to apply for loans with lenders and direct that the loaned funds be distributed to Multitaskr when no work had been performed, and when Multitaskr had no intention to perform such work.

215. Service Finance was aware of Multitaskr's actions and scheme to defraud borrowers and the unfair business practices, yet intended for Multitaskr to continue this fraudulent conduct.

216. Service Finance cooperated with Multitaskr as heretofore alleged in order to achieve funding numerous loans, and unlawfully make money on the backs of innocent borrowers.

217. Despite Service Finance's awareness of Multitaskr's fraudulent practices, conspiring and coordinating lending practices that permitted Multitaskr to continue securing fraudulent loans, and entering into home improvement agreements with customers for work they knew would never be completed, Defendant continued funding loans and disbursing funds directly to Multitaskr.

218. Service Finance benefitted from each of the customer's loans by (1) generating Dealer Fees for itself, (1) imposing loan repayment obligations upon customers like Plaintiffs who received no benefit, and (3) making profits off of selling loans downstream to other lenders.

219. Knowing that having easily available credit available to its potential customers would further promote the sale of home construction projects by Multitaskr, Multitaskr,

along with Service Finance, conspired to facilitate the sale of these projects to Multitaskr customers.

220. Service Finance knew, or should have known, that Multitaskr submitted the loan applications and secured the signing of the Home Installment Contract with Plaintiffs through fraudulent, false, and misleading representations.

221. Service Finance had industry-wide knowledge of the deficiencies and risks involved with contractors like Multitaskr, and intentionally ignored those risks in order to utilize such lending practices and procedures that would allow numerous loan obligations to be imposed upon borrowers.

222. Having such knowledge about how Multitaskr and other home improvement contractors were doing business, and knowing that it did not have proper checks and balances in place to supervise Multitaskr's activities, Service Finance enabled the behavior of Multitaskr, and acted in concert with Multitaskr, thereby facilitating the fraudulent loan documents and subsequent unlawful and use and disbursement of Loan Monies.

223. Having entered into this co-dependent and conspiratorial relationship, Multitaskr and Service Finance acted in concert to secure the Home Installment Contracts from Plaintiffs.

224. Service Finance benefitted from this conspiratorial relationship by securing Plaintiffs as a payor and ensuring that, regardless of Multitaskr's performance under the Home Installment contract, the Plaintiffs would be obligated to satisfy the loans, unless Plaintiffs engaged in the arduous task of pursuing expensive and protracted litigation which the majority of consumers cannot afford.

225. Multitaskr and Service Finance acted intentionally in the misconduct they undertook in order to secure Plaintiffs' loans.

226. Service Finance's conduct was knowing, intentional, reckless, and malicious.

227. As a direct and proximate result of the foregoing, Plaintiffs have suffered injuries, including but not limited to actual and consequential damages.

228. As a direct and proximate result of the conspiracy between Multitaskr and Service Finance, Plaintiffs are entitled to an award of actual damages, statutory damages, as well as an award of punitive damages and reasonable attorney's fees.

**COUNT VII - Violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.**
**Military Lending Act, 10 U.S.C. § 987, *et seq.*, and**
**California Financing Law, CA Fin. Code § 2200, *et seq.***

229. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein.

230. Service Finance is the owner of both of the Loans at issue in this case.

231. Service Finance is a "creditor" as defined under 15 U.S.C. § 1602(g) and 12 C.F.R. § 1026.2 (A)(17).

232. Plaintiff is a "consumer" as defined under 15 U.S.C. § 1602(i), having obtained a consumer credit transaction for personal, family, or household purposes.

233. Service Finance was to provide Plaintiffs the disclosures required by the federal Truth-in-Lending Act. 15 U.S.C. § 1638(a) ("TILA").

234. The disclosure requirements under TILA are also required under the Military Lending Act, 10 U.S.C. § 987(c).

235. A violation of 10 U.S.C. § 987 constitutes a violation of Section 22345 of California Financing Law. CA Fin Code § 22345.

236. Service Finance violated the foregoing federal and state statutes by failing to provide Plaintiffs with accurate, clear, and concise disclosure of Dealer Fees for which the loans were subjected.

237. Had Plaintiffs known that were going to have to pay loan monies in excess of the benefit they were getting for the anticipated construction project, *ergo* Dealer Fees, Plaintiffs would have sought out more favorable financing terms from their own lending sources.

238. Service Finance's conduct, practices, actions, and material omissions were deceptive and failed to meet the disclosure requirements under TILA, the MLA, and California Financing Laws.

239. Defendant is a fintech lender operating through digital platforms and only third-party contractor relationships.

240. The required disclosure of Dealer Fees were part of an undisclosed agreement between Service Finance and Multitaskr.

241. It was upon learning of this SFC Dealer Agreement in September 2024, that Plaintiffs learned that Dealer Fees were likely a charge against their Loans.

242. Plaintiffs did not receive the required disclosure "clearly and conspicuously" and "in a form the consumer may keep" prior to consummation, and therefore in violation of C.F.R. §1026.17(a)(1) and (b).

243. Defendant's violations were willful and part of a systematic practice of evading consumer protection regulations.

244. Plaintiffs requested documents related to their loans and Service Finance failed to provide those records or documents.

245. As a result of Defendant's TILA violations, Plaintiffs have suffered actual damages, including financial harm, adverse credit consequences, and is entitled to statutory damages, actual damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1640.

246. Plaintiffs further request preliminary injunctive relief to stop any repayment to Service Finance on any of the Loans, the accumulation of interest thereon, reporting of said loans to any credit reporting agency, and that these loans be voided as a matter of law.

**COUNT VIII – VIOLATION OF CA BUS. & PROF. CODE § 7160**

247. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein

248. CA Bus & Prof Code § 7160 provides attorney fees and an award of punitive and exemplary damages according to proof at trial anytime a homeowner is fraudulently induced into a home improvement contract based on the fraudulent representations and statements by a contractor or its employees.

249. Multitaskr at the time the fraudulent representations were made that it had no intention or ability to timely complete Plaintiffs' home improvement projects.

250. Multitaskr knew at the time of the fraudulent representations that it had no intention of using the Loan Monies for the agreed upon work and materials it promised to Plaintiffs.

251. Despite Multitaskr's knowledge and intent to use the Loan Monies for unauthorized purposes, Multitaskr promised to perform work for Plaintiffs, and represented the Home Improvement contracts in a way that garnered great trust and confidence of the Plaintiffs.

252. Multitaskr then obtained, hid, appropriated, and retained the Loan Monies for a wrongful use with the intent to defraud Plaintiffs.

253. As a result of Multitaskr's actions, Plaintiffs have suffered financial and other consequential damages in an amount to be proven at trial, but not less than $200,000.00.

254. As an assignee of the contracts and holders in due course, Service Finance are liable to Plaintiffs to the same extent Multitaskr would have been liable to Plaintiffs.

## COUNT IX – UNFAIR BUSINESS PRACTICES
## CA Bus. & Prof. Code § 17200, *et seq.*

255. Plaintiffs reallege and incorporate the preceding paragraphs as if fully rewritten herein.

256. California's Unfair Competition Law ("UCL"), CA Bus & Prof Code § 17200 et seq., states in pertinent part "…unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."[1]

257. At all times relevant to this lawsuit, Multitaskr engaged in acts of unfair competition proscribed by the UCL, including the practices alleged herein, and immoral, unethical, oppressive, unscrupulous conduct, all of which constitute unlawful business practices.

258. Multitaskr's acts included, but were not limited to, Multitaskr's promise that the services and construction would be completed before the grace period expired on the loans, making material misrepresentations about the content of the loans and how the monies would be disbursed thereby inducing Plaintiffs to sign the lending documents, and through further misrepresentations to Plaintiffs about "completion calls" and escrow accounts of lenders, and then accepting funds from Service Finance before performing any of the work in violation of CA Bus. & Prof. Code § 7159.

259. Further, Multitaskr deceived Plaintiffs by failing to disclose that the Loan Monies were being fully disbursed and used for projects of other customers or for other unlawful purposes, and not for that which was contracted.

260. Plaintiffs entrusted Multitaskr to be fair and reasonable in the performance of its duties and obligations, and in no event agreed to the actions or inactions of Multitaskr.

261. At all times relevant to this lawsuit, Multitaskr engaged in fraudulent and deceptive business practices such that Plaintiffs as well as other members of the public were and will continue to be deceived, confused, and horribly misled as a result of the conduct alleged herein, and further Multitaskr retained the full payment of the Loan Monies, even after demand for the Loan Monies to be returned were made.

262. Service Finance is liable for the above actions of Multitaskr pursuant to the Holder Rule, and are further liable for their deceptive lending practices for the actions it took on its own behalf.

---

[1] CA False Advertising Act, CA Bus & Prof Code § 17500.

263. Specifically, and without limitation, Service Finance deceived Plaintiffs in conspiring with Multitaskr and encouraging the use of project proposals that inflate costs in order to support Multitaskr's Dealer Fees and then fail to identify such fees in required disclosures; failing to disclose or identify the fact that they were retaining a portion of a loaned funds, and then seeking those same funds in repayment and charging interest on the principal amount loaned; preventing Multitaskr from otherwise identifying or explaining Defendant's Dealer Fees to Plaintiffs; and conspiring with Multitaskr and encouraging the use of deceptive and misleading lending practices.

264. Service Finance violated prohibitions on deceptive lending practices under California Business & Professions Code, Sections 17200 through 17209, by engaging in the deceptive and misleading practices described herein and throughout this Complaint.

265. Service Finance's actions as herein alleged also constitute unlawful practices under federal law in at least the following respects:

a. Service Finance has violated the Federal Trade Commission Holder Rule, 16 C.F.R. § 433, et seq. by, *inter alia,* failing to comply with the Holder Rule, including refusing liability and instructing Plaintiffs that they had to deal with Multitaskr to remedy any and all problems instead of themselves as the Lenders, or refusing to offer an appropriate remedy pursuant to Defendant's liability under the Holder Rule; and

b. By violating CA Financial Code § 22161(a) by engaging in dishonest dealings, among other things.

266. The acts of Service Finance, as herein alleged, constitute unfair business practices in that the acts and practices offend public policy and are substantially injurious to borrowers like Plaintiffs. Moreover, the acts and practices have no utility that would outweigh the substantial harm to Plaintiffs.

267. Service Finance's acts and practices have deceived Plaintiffs and impeded their legal rights by avoiding mandated disclosures; and by use of such deception, induced Plaintiffs to enter transactions that they would otherwise decline. The practices alleged are

fraudulent and unfair, constituting deceptive practices which were predatory under the circumstances set forth herein.

268. As a direct and proximate result of Service Finance's wrongful and deceptive acts, Plaintiffs have suffered economic and consequential damages in an amount to be proved at trial, but in at least the amount of $200,000.00.

269. Furthermore, the violations of the California's Business and Professions Code provide for injunctive and other relief. CA Bus. & Prof Code § 17203, and therefore Plaintiffs seek an injunction preventing Defendant from collecting on the Loans, charging interest on the Loans, and from reporting the Loans, or any information in connections with the Loans to any credit reporting agency.

270. Plaintiff is also entitled to an award of attorneys' fees and costs in prosecuting this action under Cal. Code of Civ. Proc. § 1021.5 because:

**i.** A successful outcome of this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices.

**ii.** This action will result in a significant public benefit by compelling Service Finance to comply with the law.

**iii.** Plaintiffs are individuals with limited income and access to the courts and the civil justice system, and unless attorneys' fees, costs and expenses are awarded against Service Finance, Plaintiffs will not recover the full measure of their losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendant as follows:

1. A Preliminary Injunction ceasing any collection or accumulation of interest on the Plaintiffs' loans, and enjoining Defendants from collecting on and reporting of the loans to any credit reporting agency;
2. An award of actual damages in an amount to be determined according to proof, but not less than $200,000.00;
3. An award of compensatory damages;
4. An award of statutory and punitive damages;
5. An award of civil penalties;

6. An award of double or treble damages;
7. An award of exemplary damages;
8. An award of punitive damages;
9. An award of prejudgment and post judgment interest at the maximum legal rate;
10. An order finding and declaring that any alleged contracts and loan documents between Plaintiffs and Multitaskr are void;
11. That the Home Improvement Contracts attached hereto as EXHIBITS A and B are void;
12. An order finding and declaring that Service Finance Company, LLC's acts and practices challenged herein are unlawful, unfair, deceptive, and fraudulent;
13. An Order finding and declaring Service Finance Company, LLC is liable for the acts of its dealer, Multitaskr; and
14. Such other and further relief as this Court deems just and proper.

Dated: July 28, 2025

Respectfully Submitted,

HICKMAN ROBINSON YAEGE LLP

By: s/ Kyle E. Yaege________________
Kyle E. Yaege, Esq.
*Attorney for Plaintiffs*

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 28, 2025

Respectfully Submitted,

HICKMAN ROBINSON YAEGE LLP

By: s/ Kyle E. Yaege
Kyle E. Yaege, Esq.

*Attorney for Plaintiffs*